S. Samuel Di Palco, S.
This motion by the petitioner in a proceeding to enforce her right to an elective share seeks an order dismissing the second and third affirmative defenses pleaded by the answers. The widow moves under CPLR 3211 (subd. [b]).
In the main proceeding the widow has alleged that the fraud of her prospective husband in 1952, in connection with the execution of the antenuptial agreement, vitiated the contract.
The respondents executors contend that the widow’s unreasonable delay, for a period of 12 years, during the lifetime of the decedent, caused the testator to change his position as to the disposition of his estate by will or otherwise and that were he aware of his wife’s dissatisfaction with the antenuptial agreement the testator could have acted differently. Other respondents argue that the true import of the defenses of laches and estoppel is to prevent the widow from pleading fraud and that in the absence of proof of fraud, the antenuptial agreement stands as a bar to the right of election. The answers plead no affirmative acts on the part of the petitioner as a basis for estoppel. The pleadings assert only a failure on her part to rescind or reform the agreement.
The decedent and the petitioner met in 1927. The decedent was then married to his first wife. The petitioner’s husband had disappeared. After a long friendship, upon the death of the first wife and annulment of the petitioner’s prior marriage, the decedent and the petitioner married in 1952, a few days after the execution of the antenuptial agreement.
No action was ever taken in respect to the agreement. During the years of the second marriage the decedent drew several wills and codicils. Under the last will the petitioner takes $25,000 outright and her income from one third of the residuary is said to be about $30,000 per annum.
The question presented by this case is: Assuming as the court must, for the purpose of this motion, that the widow can prove fraud on the part of the decedent, does her delay in asserting the claim of fraud estop her from asserting a right to an elective share of this estate, or from pleading fraud to invalidate the agreements
*642 It is this court’s ruling that the question presented be answered in the negative and that the motion to dismiss the defenses of laches and estoppel be granted.
This agreement spelled out the rights of the parties in a marriage relationship. Upon discovery of the fraud it is doubtful whether that relationship could have continued had the widow acted to reform or rescind the agreement during the decedent’s lifetime. There cannot be applied to this situation any rules of estoppel appropriate to commercial agreements or actions for the annulment of marriage relied upon by the respondents. There are different considerations and it is in the public interest to preserve a marriage.
In Friedman v. Libin (4 Misc 2d 248, 252, affd. 3 A D 2d 827) the court said: “ Although marriage is a civil contract (Domestic Relations Law, § 10), it is hazardous to view marriage in all of its aspects as an ordinary contract, as that term is employed in the law ”. The court in this case struck defenses relating to estoppel on the part of the wife arising out of acceptance of the benefits of the marital relationship.
All contracts entered into between husband and wife and prospective husband and prospective wife have always been subject to special scrutiny by our courts. The nature of the relationship has made it the public policy of our State to demand such supervision. The law surrounds the marriage relationship and each of the parties to a marriage with certain safeguards and prohibitions not available to persons who deal at arm’s length. (Pierce v. Pierce, 71 N. Y. 154; General Obligations Law, § 5-311). In Pierce v. Pierce (supra pp. 157-158) the court stated: ‘ ‘ Ante-nuptial contracts, whereby the future wife releases her claim to her right of dower, and all other rights to the estate of her husband upon his decease, are fully recognized in law. When fairly made and executed without fraud or imposition, they will be enforced by the courts. The surrender and release of rights to be acquired by the intended wife by the marriage relation must, however, be regarded with the most rigid scrutiny; and courts will not enforce contracts of this nature against the wife where the circumstances establish that she has been over-reached and deceived, or been induced by false representations to enter into a contract which does not express or carry out the real intention of the parties. The relationship of parties who are about to enter into the married state, is one of mutual confidence, and far different from that of those who are dealing with each other at arms length. This is especially the case on the part of the woman; and it is the duty of each to be frank and unreserved when about to enter *643 into an ante-nuptial contract, by a full disclosure of all facts and circumstances which may in any way affect the agreement. ’ ’
As a matter of law this petitioner may not be estopped by her failure to institute any action with respect to the 1952 agreement. For the purpose of the defenses here being considered the court must assume that fraud will be proved. Bad faith having been shown, the executors could hardly raise a defense grounded on good conscience and fair dealing. (People v. Wirtschafter, 305 N. Y. 515, 524; 31 C. J. S., Estoppel, § 75; see, also, Matter of Weeks, 294 N. Y. 516; Matter of McGlone, 284 N. Y. 527, 534.)
Generally, the equitable doctrine of estoppel is not employed to prevent the assertion of fraudulent and inequitable conduct (Crowell-Collier Pub. Co. v. Josefowitz, 9 Misc 2d 613, affd. 5 A D 2d 987, affd. 5 N Y 2d 998).
In Angerosa v. White Co. (248 App. Div. 425, 429, 431, 433) it was said: “ To deny relief to the victim of a deliberate fraud because of his own negligence would encourage falsehood and dishonesty. (Albany City Savings Institution v. Burdick, 87 N. Y. 40; King v. Livingston Mfg. Co., 180 Ala. 118, 127; 60 So. 143; Antonopoulos v. Chouteau Trust Co., 337 Mo. 252; 84 S.W. [2d] 1059; Nash Mississippi Valley Motor Co. v. Childress, 156 Miss. 157, 163; 125 So. 708; 42 Harvard Law Review, 733, 739, 740; Williston Sales [2d ed.], § 634.) * * * In this jurisdiction protection is given to one who is injured by falsehood or deception; fraud vitiates everything which it touches, and destroys the very thing which it was devised to support; the law does not temporize with trickery or duplicity. A contract, the making of which was induced by deceitful methods or crafty device, is nothing more than a scrap of paper, and it makes no difference whether the fraud goes to the factum, or whether it is preliminary to the execution of the agreement itself. (Arnold v. National Aniline & Chemical Co., 20 F. [2d] 364; Universal Fashion Co. v. Skinner, 64 Hun 293; Bridger v. Goldsmith, 143 N. Y. 424; Industrial & General Trust, Ltd., v. Tod, 180 id. 215.) * * * I do not think that the principle of estoppel is applicable in this case. That is a doctrine which is essentially equitable in its nature, and is founded on good conscience and fair dealing. It is invoked to prevent fraud and injustice. (Lawrence v. American Nat. Bank, 54 N. Y. 432, 436.) One who has acted in bad faith cannot avail himself of the remedy. There Can be no estoppel against dishonest conduct. The perpretrator of fraud cannot close the lips of his victim and deny him the right to state the facts as they actually exist. ” *644 It is the opinion of the court that a contract horn in fraud may not stand. See Whipple v. Brown Bros. Co. (225 N. Y. 237, 245-246):
‘ ‘ ‘ The practice adopted by the plaintiff was entirely proper. He was not obliged to appeal to a court of equity for relief against the deed, but when it was set up to defeat his claim he could avoid its effect by proof of the fraud by which it vras obtained (Kirchner v. New Home Sewing Machine Co., 135 N. Y. 182).’ (Wilcox v. Am. Tel. & Tel. Co., 176 N. Y. 115,118.) (See also, Lotter v. Knospe, 144 Wis. 426; Biddeford National Bank v. Hill, 102 Me. 346; Black v. Wabash, St. Louis & Pacific Railway Co., 111 Ill. 351; Warder, Bushnell & Glessner Co. v. Whitish, 77 Wis. 430; Alexander v. Brogley, 63 N. J. L. 307.)
‘ ‘ The writing in the case at bar lacks the element of mutual' assent. It does not express the result of the meeting of the minds of the parties. It is a mere fiction, a nothing or a something which becomes nothing the instant the proof of the deceit under which the signature was made is given. ”
See, also, Moses v. Carver (164 Misc. 204, 212, affd. 254 App. Div. 402): “When deception induced by misrepresentation relates to the nature of the contract which another is thereby induced to execute, and provides such essential error that the person so tricked and deceived may be said never to have intended to make any contract whatsoever of the nature alleged, the so-called contract is deemed to have been wholly void ab initio. In such a case there is no contract to be disaffirmed; it never existed by mutual consent. In such a case rescission is not the remedy; as a contract it is not susceptible of rescission. ”
Finally in Matter of Smith (243 App. Div. 348, 353) the court citing cases said: “If there was a breach by the decedent of any duty which he owed his wife, or if he gained an undue advantage over her, or if he misled her to her prejudice, even though he intended no actual wrong, he still would be guilty of constructive fraud, and the instrument in question would be null and void. ’ ’
This court has examined Matter of Hart (53 Misc 2d 555, 558-559) relied on by the respondents and respectfully disagrees with the statement “ petitioner is estopped to deny the validity of the agreement and that laches is also a bar. ” Moreover, none of the cases cited as to estoppel and waiver at page 559 relate to an antenuptial agreement.
The petitioner widow’s motion to dismiss the affirmative defenses of estoppel and laches is granted.