LAUREL AUTO SUPPLY CO. *v.* SUMRALL.

(Division A. Jan. 9, 1939.)

[185 So. 566. No. 33412.]

Welch & Cooper, of Laurel, for appellant.

**F. B. Collins**, of Laurel, for appellee.

92

**McGowen, J.,** delivered the opinion of the court.

Sumrall, the appellee, brought an action against Laurel Auto Supply Company in the County Court of Jones County for damages for fraud and deceit. On the trial of the case the jury returned a verdict for $200. The case was appealed to the Circuit Court and affirmed, and appeal is prosecuted here.

The fraud alleged and proven almost conclusively was that the appellant sold a car, which had been used as a demonstrator, to Sumrall and accepted in payment therefor a used car owned by Sumrall as a payment of $200, and $36 cash. He executed an installment agreement, the substantial elements of which have been many times before this Court, and also his promissory note for the balance to be paid in monthly installments. The note was a negotiable instrument. It was transferred to a finance corporation, a third party, without recourse by the ap-

pellant. Likewise, the conditional sales contract of Sumrall was assigned to the finance company.

The fraud proven was that while the car was sold as a used car, it was likewise sold as a demonstrator car, and, at the time of the making of the contract between Sumrall and the automobile company, the speedometer on the car showed that it had been operated a mileage of 5,341 miles. Gartrell, the general manager of the automobile company, told Sumrall, in the presence of witnesses, that the speedometer correctly represented the mileage. It was shown without contradiction that when the automobile company had repossessed the demonstrator car from the person to whom it was first sold, the speedometer then showed that the car had been operated 14,380 miles. There was other evidence that the car was in bad order within three days after the consummation of this trade. The jury could not have found otherwise on the facts in this case but that the car was sold under this false representation, and that this representation was the material factor which induced the trade. There were other misrepresentations, but the one as to the mileage was sufficient to render void the contract regardless of the other matters. See Nash Mississippi Valley Motor Co. v. Childress, 156 Miss. 157, 125 So. 708, and Lizana v. Edward Motor Sales Co., 163 Miss. 266, 141 So. 295, and the authorities therein cited.

A purchaser of property who has been deceived by material false representations in the procurement of the contract, which renders it void, may elect to rescind and to be restored to the position he occupied at the time of the sale. He must, however, act promptly and return to the seller that which he, the buyer, obtained as a part of the sale, and thereupon the vendor is under obligation, and it is his duty, to restore to the buyer anything of value which the seller has obtained from him as a consideration therefor. Or he may retain the property and recover from the seller the difference between the actual value of the property in the condition as it was when de-

livered to him, and the price paid by him to the seller therefor.

The evidence introduced on behalf of appellee was to the effect that as soon as he discovered the misrepresentation within about three days he offered to return the automobile he had received to the seller and demanded the restoration of his old car and the cash he had paid. The seller declined to do this. Thereafter the appellee retained the car and used it as if his own for several months until it was taken from him by a third party on a writ of replevin instituted by the finance company, the owner of the conditional sales contract.

We will assume, for the purpose of this decision, but not so deciding, that the retention of the car by the appellee waived his right to a rescission.

The testimony is on behalf of appellee that the actual value of the automobile at the time of the sale did not exceed $350. Omitting the carrying charges, the price he agreed to pay for the car was $711.77, of which he paid his car, valued at $200, and $36 cash, and executed a note for the balance, plus carrying charges. Had he paid the full contract price in cash at the time of the void sale, there could be no debate as to the measure of damages to be applied in this case, which under appellee's evidence would be the difference between $711.77 and $350, which would be far in excess of the $200 which the jury allowed the appellee.

The note was immediately sold by the appellant to an automobile finance company, and without recourse, and was negotiable. The amount paid to the appellant by the finance company for the note is not shown, but for the purpose of this discussion it may be assumed that appellant collected from the finance company the face of the note, less the carrying charges. It is material to emphasize here that the note went into the hands of a third-party without notice so far as this record discloses so that the appellee has no defense against the note in the

hands of a third party. The appellee was not shown to have been insolvent. We therefore must assume that the appellee can be coerced into the payment of the note, or whatever may be due on it. It is not shown in this record what the finance company received for Sumrall's car, which it had repossessed, but if the amount of the value as shown by appellee's evidence should be taken as the proper credit, still there would be much more due than the $200 allowed by the jury.

The appellant's testimony, however, was that the car was worth, at the time of the trial, about $700. The jury saw the car. If the jury had adopted the appellant's evidence as to the value of the car then it would be clear that with the car repossessed from him credited on his note, at what appellee says was its value, his note to the finance company would be fully discharged.

However, this record only shows that the note is still an outstanding liability of the appellee, and that it is in the hands of a third party, and there is nothing in this record to show that he cannot be compelled to pay whatever the finance company may establish as being the balance due on the note, if anything. The note appears to be in the hands of a third party as a holder for valn without notice, which so far as this record discloses leaves the appellee without a defense thereto. So that we conclude the case, which stands before us, as if the appellee had paid the full contract price, less the carrying charges.

It would seem from this statement of facts that the jury ought to have returned a verdict for $236, the value of the car traded in by appellee, and the cash paid by him, as a minimum. Yet the jury saw the car and heard the evidence as to its remaining in the possession of the appellee for several months, which may account for the jury's verdict.

This statement of the case leads us to the conclusion that there is no reversible error in the record.

Affirmed.