HUNT *v.* SHERRILL.

(In Banc.   Oct. 25, 1943.)

[15 So. (2d) 426.   No. 35398.]

Lyell & Lyell, of Jackson, and W. L. Guice, of Biloxi, for appellant.

White & Morse, of Gulfport, for appellee.

Argued orally by **W. L. Guice** and **G. G. Lyell**, for appellant, and **by S. E. Morse**, for appellee.

**Roberds, J.,** delivered the opinion of the court.

In August, 1941, Hunt, appellant, sold, and by deed conveyed, to Mrs. Sherrill, appellee, the Riviera Hotel in Biloxi, Mississippi, with all furniture, fixtures and furnishings therein and all appurtenances and improve-

ments thereunto belonging, including the trade name and good will of the hotel. The consideration was seventy-five thousand dollars. Mrs. Sherrill paid fifteen thousand dollars cash and assumed an existing, and executed to Hunt a second, mortgage debt on the property for the balance. The property was sold, purchased and conveyed as an entirety, no value being placed by the parties upon any separate part, class or article thereof.

Mrs. Sherrill, in this action of fraud and deceit, claims that Hunt misrepresented to her (1) the make and condition of two large refrigerators, and (2) the value and amount of new linen, and (3) the quantity and quality of the beds in the hotel, which false representations induced her to make the purchase; and she sues for, and limits her action to, the damage as to these three classes of property. She obtained a verdict and judgment for $1,843.55, the aggregate amount for which she sued. She does not claim in this action that the hotel as an entirety in the actual condition delivered to her was not worth the price she paid for it. The effect of that theory of the action and damage, and the further proceedings and facts of the case necessary to an understanding of the questions presented on this appeal, will be developed as we dispose of these questions.

Hunt assigns as error the refusal of the court to grant him this instruction: ''The Court instructs the jury on behalf of the defendant, that if the defects complained of in the articles purchased and the shortages alleged in the articles purchased could easily have been ascertained by a casual examination of the Hotel Riviera before the plaintiff purchased same, and if the plaintiff had an opportunity to make such examination and failed to so examine the articles in the said hotel, then and in that event the jury shall find for the defendant.''

He says that in Deshatreaux v. Batson, 159 Miss. 236, 131 So. 346, this court announced the rule that where the means of information are equally accessible to both parties the purchaser has no right to rely upon represen-

tations of the seller. See, also, Citizens Nat. Bank v. Pigford, 176 Miss. 517, 166 So. 749. Without now trying to clarify, or to define with exactness the stated rule, it was error not to grant this instruction under the evidence in this case. The testimony of Mrs. Sherrill shows that her failure to examine the contents of the hotel was not due to statements made to her by Hunt as to the quantity and quality of such contents, but was because, as she claims, Hunt refused to grant her request to go into the hotel and make such examination. She testified that she and her attorney and adult son went to the hotel, "and I suggested that I go into the hotel and look at it, and Mr. Hunt told me that would disrupt the organization to have a prospective buyer nosing around the hotel." This was after Hunt supposedly made his representations. In other words, Mrs. Sherrill desired and intended satisfying herself as to the contents of the hotel by personal inspection and examination thereof regardless what she claims had been said to her by Hunt about them. Had she done that, she could easily have ascertained the quantity and condition of the refrigerators, linen and beds, in which case, had the alleged shortages and defects existed, she naturally would have taken these conditions into consideration in making her trade. But she did not examine for herself solely because Hunt told her to stay out. Hunt emphatically denied that he said or did these things, and denied that he did anything to prevent such inspection by Mrs. Sherrill personally or through an agent. Opportunity of examination mentioned in the requested instruction meant, under this record, permission or refusal by Hunt to make it. Again, whether Hunt did or did not in this manner prevent inspection was an important fact bearing upon whether he defrauded her.

Instructions, regardless of the theoretical law announced thereby, should be applicable to the issues and proof of the particular case. Dennis v. Jones, 31 Miss. 606; Lombard v. Martin, 39 Miss. 147; Williams v. City of Gulfport, 163 Miss. 334, 141 So. 288; Yazoo & M. V. R. Co. v. Aultman, 179 Miss. 109, 173 So. 280; Interstate

Life & Accident Co. v. Cooley, 150 Miss. 502, 117 So. 267. This instruction was so applicable and Hunt had a right to have it submitted to the jury. No other instruction, granted or refused either party, dealt with the same situation.

Mrs. Sherrill was granted the instruction the reporter will set out in full in the margin.[1] Hunt contends this instruction is erroneous because (1) fraud cannot be shown by a mere preponderance of the evidence, as therein announced, but must be shown by proof which is clear and convincing, and (2) the instruction prescribed no measure of damage for the guidance of the jury, but "took the bridle off" and permitted the jury to run wild on that question. This was the only instruction Mrs. Sherrill obtained, or requested, other than one on the form of the verdict and a nine-juror instruction.

Dealing with the first contention, this court, in a long line of decisions, has said that fraud must be shown by evidence which is clear and convincing.[2] In the Martin v.

---

[1]"The Court charges the jury for the plaintiff that if you are reasonably satisfied from a preponderance of the evidence in this cause that the defendant, or his agent, falsely made material representations of fact to the plaintiff concerning the value and quality of the linens, bedroom sets and refrigerators, situated in Hotel Riviera, or that they recklessly made material representations of fact concerning the value and quality of such items without regard to the truth or falsity thereof, and if you further believe that said representations were material, and were false and untrue, and the plaintiff relied thereon, and not on her own judgment, and was thereby induced to make a bargain relying on said representations, and that she was damaged thereby, then it is your duty to return a verdict for the plaintiff for such damages as you may believe from the evidence she suffered on account of such representations, if any.

[2]Carter v. Eastman-Gardner Co., 95 Miss. 651, 48 So. 615; Metropolitan Life Ins. Co. v. Hall, 152 Miss. 413, 118 So. 826; McCain v. Cochran, 153 Miss. 237, 120 So. 823; Dowling v. Whites Lumber & Supply Co., 170 Miss. 267, 154 So. 703; Columbian Mut. Life Ins. Co. v. Harrison, 170 Miss. 121, 154 So. 722; Newport Industries v. Crosby Naval Stores, D. C., 48 F. Supp. 422; Martin v. Gill, 182 Miss. 810, 181 So. 849; New York Life Ins. Co. v. Gill, 182 Miss. 815, 182 So. 109; Grenada Auto Co. v. Waldrop, 188 Miss. 468, 195 So. 491.

Gill case the court stated that charges of fraud ". . . must be supported by proof which is clear and more convincing than a mere preponderance." [182 Miss. 810, 181 So. 850.]

But Hunt obtained an instruction telling the jury that fraud must be shown by clear and convincing evidence, and it is contended that this cured the error in Mrs. Sherrill's instruction. In Ellis v. Ellis, 160 Miss. 345, 134 So. 150, 153, which was a will contest on the ground of forgery, an instruction was granted the proponent ". . . to the effect that the introduction of the proceedings admitting the will to probate was prima facie evidence of its genuineness and validity, and that the burden of proof was on the contestant to prove by clear and convincing competent evidence that said will is a forgery," and an instruction granted the contestant "informed the jury that the probate of the will was only prima facie evidence of its genuineness, and the burden was on the appellee [proponent] to prove by a preponderance of the evidence that the signature thereto was the genuine signature of the testator." In response to the contention that the first cured the error in the second instruction the court said: "An erroneous instruction may be cured by one granted the opposite party which supplements, modifies, and clarifies the erroneous instruction, but it is not cured or corrected by one in conflict therewith. The two instructions referred to above are in sharp conflict as to the burden of proof upon the issue submitted to the jury, and they afforded the jury no safe guide in passing upon the conflicting evidence bearing upon the issue." See Jackson v. Leggett, 186 Miss. 123, 189 So. 180; Friedman v. Allen, 152 Miss. 377, 118 So. 828; May v. Culpepper, 177 Miss. 811, 172 So. 336; Nowell v. Henry (Miss.), 12 So. (2d) 540. The instruction under consideration was erroneous, and the two cannot be reconciled, and were confusing and misleading to the jury.

It is unnecessary for us to pass on the second objection to this instruction.

Hunt further objects to this instruction because it permits the jury to base a verdict for Mrs. Sherrill upon his false statements of the "value" of the articles. He says such statements are mere opinions and not statements of fact supporting an action for fraud and deceit. Mrs. Sherrill says that this expression means to describe the quantity of the articles. On another trial the wording of the instruction will likely be changed in that regard, so that we deem it unnecessary to now decide these contentions.

Mrs. Sherrill took possession of the property about noon. That afternoon and the next day she made an inventory of the contents of the hotel. It is not clear from her testimony whether she set a price on the different articles, or classes, of property in that inventory. It did not include the buildings. Counsel for Hunt, on their cross-examination of Mrs. Sherrill, offered this inventory in evidence, and on objection of her counsel the court then denied permission to introduce it. This is assigned by Hunt as error. Whether competent or not the inventory was offered out of time. Hunt was not then introducing his evidence. The inventory is not in the record and we do not know just what it contains, and, therefore, cannot say whether it was competent had it been offered at the proper time. It was not error to deny its introduction under the circumstances.

Hunt next contends that the testimony of Mrs. Sherrill shows conclusively that in making the purchase she did not rely upon representations of Mr. Hunt as to the articles in question. She did make that statement in, and as a part of, one of her answers, but in several other places she stated that she did so rely. The question was submitted to the jury, and properly so, under this evidence. F. W. Woolworth Co. v. Freeman, 193 Miss. 838, 11 So. (2d) 447.

Lastly, Hunt contends that this case should be reversed and judgment entered for him here because this was a sale of property as an entirety, no separate value or price

being fixed upon any articles, class or part thereof, and that, therefore, it was necessary for Mrs. Hunt to prove the fair, reasonable value of the property as a unit in both its represented and actual condition, the difference being the measure of the damage, and that proof of, and limited to the shortages and defects in the three classes of articles, as set out above, and the damage resulting therefrom, did not comply with the rule for ascertaining damage in cases of this kind. He raised that question throughout the trial—by demurrer to the declaration, motion to exclude the evidence, and request for a peremptory instruction.

There is a sharp conflict of authority as to the measure of damage in such cases. Four rules have been adopted; (1) The benefit-of-the-bargain rule; (2) the out-of-pocket or contract rule; (3) the flexible or equitable rule, which adopts one or the other of the two foregoing rules as is best adapted to the particular case; and (4) the sum required to make the actual state of facts conform to the representations rule. 24 Am. Jur., Secs. 227, 228, 229, 230; Anno. 124 A. L. R. p. 37, et seq.

The benefit-of-the-bargain is the majority rule. Under it the party defrauded is entitled to recover the difference between the real and the represented value of the property. In other words, he is entitled to the benefit of his bargain. In the instant case, under that rule, had Mrs. Sherrill by proper proof shown the fair, reasonable value of the hotel as represented to have been eighty thousand dollars, but the value in its actual condition to have been sixty thousand dollars, she could have recovered twenty thousand dollars.

But under the contract, or out-of-pocket rule, her recovery would have been the difference between sixty thousand dollars and the contract price of seventy-five thousand dollars.

Under the equitable or flexible rule, the amount of her recovery would have depended on whether the court applied the bargain or contract rule. However, under both

the bargain and contract rules proof must be made of the fair, reasonable value of the property as an entirety in both its represented and actual condition. But in the contract rule the purchase price fixes such value in its represented condition. And under the benefit-of-the-bargain rule the contract price, in the absence of other proof, will establish the represented value in several of the states, including Mississippi. Estell v. Meyers, 54 Miss. 174; Id., 56 Miss. 800. Proof of the price is always strong evidence of the represented value. Page v. Parker, 40 N. H. 47; Carr v. Moore, 41 N. H. 131; Page v. Parker, 43 N. H. 363, 80 Am. Dec. 172; Selman v. Shirley, 161 Or. 582, 85 P. (2d) 384, 91 P. (2d) 312, 124 A. L. R. 1, 16. But under the three foregoing rules the proof of value, both represented and actual, is of the property as an entirety.

Under the fourth rule—the replacement or make-good rule—the evidence of damage need be only of the damage resulting from the misrepresentation as to the particular article or articles. No proof is necessary of the actual value of the entire property as a unit. Nunn v. Howard, 216 Ky. 685, 288 S. W. 678; Dinwiddie v. Stone, 52 S. W. 814, 21 Ky. L. Rep. 584.

It is not clear from the cases which rule Mississippi has adopted. In the Estell v. Myers case, supra, all the rules were mentioned, and apparently the benefit-of-bargain rule was announced at least theoretically. But the procedure and the proof followed the replacement rule. Stone v. Pounds, 126 Miss. 671, 88 So. 629 (suggestion of error overruled in part and sustained in part, 126 Miss. 677, 89 So. 652), cited the Estell case as supporting the rule applied in that case. However, in the later cases of Laurel Auto Supply Co. v. Sumrall, 184 Miss. 88, 185 So. 566, and Citizens Nat. Bank of Meridian v. Pigford, 176 Miss. 517, 166 So. 749, the court expressly adopted the out-of-pocket, or contract, rule, using in the Laurel case this language; "Or he [purchaser] may retain the property and recover from the seller the difference between

the actual value of the property in the condition as it was when delivered to him, and the price paid by him to the seller therefor.'' [184 Miss. 88, 185 So. 567.] So that this court seems to have adopted both the bargain and contract rules, and yet, in the procedure and proof, applied the conformity to representations rule. Without undertaking to set forth all of the advantages and disadvantages of each rule, we think the conformity to representations rule is the fairer to all parties, works justice, is more susceptible of dependable proof, and that the required proof of the causes of, and the resulting damage, is more reliable, specific and certain. We adopt that rule in this state in the cases where the facts and circumstances are susceptible to the application of that rule. This rule would appear to be applicable to all cases of misrepresentation as to the amount, quality, kind and characteristics of the property purchased. But in cases where the foregoing rule is not applicable, as, for instance, where there is a material misrepresentation of past rents and income from the property, or a false representation of the existence of an accessible highway from the property —representations not as to quality, quantity, characteristics of, but collateral to, the property—we adopt the contract, or out-of-pocket rule. We are largely impelled to this conclusion by the difficulty of making proof of damages under the benefit-of-the bargain rule.

As was said in 24 Am. Jur., supra, page 60: ''Guesswork and arbitrary estimation are common enough in fixing the value of property as it actually exists; but these elements are greatly aggravated in determining the value of property to which are attributed certain fictitious and hypothetical characteristics.''

It is true that under the contract rule the same kind of proof must be made of the actual value, but, as above stated, such proof of actual value is more certain and definite than of represented value, and the contract rule has the additional virtue that the contract price fixes the value of the represented condition. For instance, in the case at bar, the proof was limited to the shortages

and defects in the three classes of articles named. The replacement, or repair, costs are certain, specific and definite. Suppose the misrepresentations had applied only to two beds. Under the benefit-of-the-bargain rule proof would have been required of the fair, reasonable value of the entire hotel with the beds as represented and of such value of the entire property as the beds existed. Such proof of value of the entire property would likely have varied as much as twenty thousand dollars, whereas the amount in question might not have been over fifty dollars. Again, take the Estell case. This was a purchase of a large delta plantation with all personal property connected therewith as a walkout proposition for seventy-one thousand dollars. Suppose the false representations had been that the mules were sound but, in fact, two out of the total of forty were blind. Instead of the proof of the damages resulting from the blindness of these two mules being permissible and sufficient, as would have been the case under the rule we now adopt, the witnesses would have had to estimate the value of the entire plantation and all personal property and equipment as an entirety with the two mules with good eyes, in the one case, and blind in the other case. Such testimony and the conclusions to be drawn therefrom by the jury are guess work of the most dangerous kind, limited only by the imagination of the witnesses, and, to a large extent, that of the jury. It will be remembered that the plaintiff has in such cases the option to rescind the contract and sue for return of the consideration, or a suit for breach of warranty, if there is a warranty, or an action for damage for fraud and deceit, so that his rights are amply protected under the rules here adopted in this state.

Reversed and remanded.

CONCURRING OPINION.

**Smith, C. J.,** delivered a separately concurring opinion.

This is an action for deceit and the gist of such an action is damage, without which it will not lie. Hall v.

Thompson, 1 Smedes & M. 443; Harris v. Ransom, 24 Miss. 504; Salter v. Aviation Salvage Co., 129 Miss. 217, 91 So. 340, 26 A. L. R. 987; Praetorians v. Thompson, 160 Miss. 85, 133 So. 228; 23 Am. Jur., Fraud & Deceit, Section 172; 37 C. J. S., Fraud, Sec. 40.

The damage claimed in such an action in order to be recoverable must be such as the law permits in the class of transactions which include the transaction in which the damage claimed was sustained; or, to state it differently, the damage must be ascertained or measured by the law's standard or measure therefor. In the law of sales, in which this case falls, that standard or measure is the difference between the value of the property purchased and the value it would have had had the false representation which induced its purchase been true. Estell v. Myers, 54 Miss. 174, and Id., 56 Miss. 800; Laurel Auto Supply Co. v. Sumrall, 184 Miss. 88, 185 So. 566. These cases are in accord with the great weight of authority. 37 C. J. S., Fraud, Sec. 143; 46 Am. Jur., Sales, Section 782; and 24 Am. Jur., Fraud & Deceit, Sections 227, et seq. In order for damage in this character of case to appear the evidence must disclose the actual value of the property purchased and its value had it been as represented. No evidence was here introduced as to the actual value of this hotel and its equipment, consequently the appellee's case should fail and the court below should have directed a verdict for the appellant.

There is no conflict between the Estell v. Myers cases, supra, and Laurel Auto Supply Co. v. Sumrall, supra. In the former in 56 Miss. at page 806, the court said: "The true rule, therefore, is, to ascertain the actual, intrinsic value of the thing sold, on the day of sale; then ascertain what it would have been worth on that day if it had in all respects answered to the representations on the faith of which it was purchased; deduct the one sum from the other; the remainder produced is the damage sustained; and this sum may be set off against the amount due, if the price remains unpaid, or may be made

the basis of an independent action for deceit. The contract price, however, will always be taken as the value of the thing as represented, unless a higher or lower value be clearly established.''

The Laurel Auto Supply Co. case was an action for deceit in the sale of an automobile. In the course of its opinion the court there said [184 Miss. 88, 185 So. 567]: ''A purchaser of property who has been deceived by material false representations in the procurement of the contract, which renders it void, may elect to rescind and to be restored to the position he occupied at the time of the sale. . . . Or he may retain the property and recover from the seller the difference between the actual value of the property in the condition as it was when delivered to him, and the price paid by him to the seller therefor.'' This measure of damages there laid down in broad and general terms must be restricted to and limited by the facts of the case the court then had before it. The rule limiting the meaning and scope of the language of a court's opinion to the facts of the case it was considering is probably universal, 14 Am. Jur., Courts, Section 79, and has been in vogue in this state at least since 1845. Bell v. Tombigbee R. Co., 4 Smedes & M. 549; Buckingham v. Bailey, 4 Smedes & M. 538; Pass v. McRea, 36 Miss. 143; Garnett v. Cowles, 39 Miss. 60; Tyson v. Utterback, 154 Miss. 381, 122 So. 496, 63 A. L. R. 1188.

In the Laurel Auto Supply Co. case, supra, the contract price for the automobile was $711.77. Its actual value, according to the purchaser's evidence, was $350, and there was no evidence other than the contract price of what its value would have been had it been as represented. When the court came to state the measure of damages in the case before it, it said: ''Had he [the purchaser] paid the full contract price in cash at the time of the void sale, there could be no debate as to the measure of damages to be applied in this case, which under appellee's evidence would be the difference between $711.77 and $350.'' As

there was no evidence there of the represented value of the automobile other than the contract price therefor the court followed Estell v. Myers, supra, when stating concretely what the measure of damages there was and the language previously used by it should be restricted accordingly.

Instead of applying the rule for the measure of damages in cases of this character heretofore in vogue in this state, and now in the great majority of other states, the court has departed therefrom and applied a new rule, heretofore unknown in this state, which it designates as the "replacement or make-good rule," and held the appellant to the repayment of the expenditures made by the appellee in making good the three alleged misrepresentations made to her by the appellant, each of which applied to separate specific articles of the hotel's equipment, none of which were separately sold or separately valued when the appellee purchased the hotel and its equipment. The injustice of this rule will clearly appear when we consider that for aught this evidence discloses the property which the appellee here purchased may be worth much more than she contracted to pay for it, and consequently she has not only suffered no loss because some of the items composing it were not as they were represented to her to be, but has made a very profitable bargain.

One of the appellant's alleged misrepresentations is stated by my associates to be as to "the value and amount of new linen . . . in the hotel." As I understand the record this representation was as to the value only of the linen and not as to the amount or quantity thereof. A misrepresentation as to the value of property does not generally constitute a ground for an action for deceit. Deshatreaux v. Batson, 159 Miss. 236, 131 So. 346. I will not pause, however, to inquire whether it constitutes such a ground here.

My associates having declined to follow either Estell v. Myers, supra, or the Laurel Auto Supply Co. case, supra, as they interpret the opinion in the latter, removes any

reason or justification they might otherwise have had for attempting to resolve what they say is a conflict between those two cases and to prophesy what they or their successors would hereafter hold relative thereto when a case is presented necessitating a decision of that question. That prophesy is pure dicta and should not have been here made.